# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Derek J. Fahnestock
(302) 351-9347
dfahnestock@morrisnichols.com

January 4, 2023

The Honorable Gregory B. Williams                                     *VIA ELECTRONIC FILING*
U.S. District Court for the District of Delaware
844 North King Street, Unit 26, Room 6124
Wilmington, DE 19801-3555

      Re:    *Corteva Agriscience LLC v. Monsanto Company and Bayer CropScience LP,*
             C.A. Nos. 22-1046-GBW (D. Del.)

Dear Judge Williams:

      We write on behalf of Defendants Monsanto Co. and Bayer CropScience LP (collectively, "Defendants") to address the questions raised in the Court's December 27, 2022 Oral Order, regarding the parties' joint proposed scheduling order (D.I. 19).

## I.    Why Plaintiff's Initial Disclosure of its Damages Model is Incomplete

      Plaintiff Corteva Agriscience LLC's ("Corteva") initial disclosure of its damages "model" was merely a statement that Corteva believes it is entitled to a reasonable royalty under 35 U.S.C. § 284—a statement that provides no information beyond what it alleged in its Complaint.  *Compare* Exhibit 1 at 3 *with* D.I. 1 at 15.  The particular circumstances present in this action render that disclosure virtually meaningless.

      The damages issues here differ from the usual case because the products Corteva has accused of infringement are not on the market.  Nor will they be on the market until after expiration of the patent-in-suit in May 2025 (or January 2026 if any patent term adjustment is included).  Early disclosure of how Corteva is modeling its damages theory is thus essential to frame the discovery to be taken in this action.  In short, Defendants need Corteva to explain what its damages theory is for products that will never be marketed during the life of the asserted patent.

      Corteva contends that it need not disclose further details "because discovery has only just begun and Bayer has produced no financial information or other documents to Corteva."  Exhibit 2.  But this does not justify Corteva's threadbare disclosure, because the factors—including the *Georgia-Pacific* factors—that can be used to assess a reasonable royalty do not depend solely on discovery from Defendants.  The fact that the Court's form scheduling order requires disclosure

The Honorable Gregory B. Williams
January 4, 2023
Page 2

of a damages model at an early phase of the case reflects that a patentee can (and should) provide its damages model without first obtaining discovery from the defendant.

## II.   Why the Parties' Paragraph 3 Disclosures Should be Based on the Date of the Rule 16 Scheduling Conference

The disclosures in paragraph 3 of the Court's Form Order largely mirror those found in paragraph 4 of the District of Delaware Default Standard for Discovery ("Default Standard"). The Default Standard expressly keys those disclosures off the Scheduling Conference, Default Standard ¶ 4.a, and further provides that "[i]n the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement," *id.*, ¶ 1.a.  Because the parties were unable to reach agreement here concerning the timing of initial disclosures, Defendants proposed that, similar to the Default Standard, the exchanges should be keyed off the scheduling conference and spaced 30 days apart.

The Default Standard's use of the Rule 16 Scheduling Conference as an anchor for initial disclosures is a sensible approach that prevents a plaintiff from unilaterally jump-starting the exchanges of initial disclosures, including production of core technical documents.  That is exactly what Corteva tried to do here:  it served information required by paragraph 3(a) of the Court's Form Order and the Default Standard before the parties had reached agreement concerning the timing of initial disclosures.  That is precisely what the Default Standard guards against by linking commencement of the initial disclosures to the Scheduling Conference.  *See* Default Standard, ¶ 4.a.  Corteva's disclosures on their face state that they were made "in accordance with paragraph 4.a. of the Default Standard for Discovery," Exhibit 1 at 1, which undermines Corteva's position that Defendants' disclosures were due before there was even a date for a scheduling conference. Accordingly, Defendants submit that the timing of exchanges should be keyed off of the timing of the Scheduling Conference.

## III.   Why the Court Should Adopt Defendants' Proposed Limits on Depositions

Courts in this district permit inventor depositions to exceed seven hours where warranted, including up to 14 hours.  *See, e.g.*, Exhibit 3; Exhibit 4.  Defendant's request for a 14-hour limit here is justified by the specific facts in this case.  One of the named inventors submitted two declarations during prosecution of the application for the patent-in-suit in which he offered various opinions about Corteva experimental data not contained in the patent.  Thus, Defendants need sufficient time to question him about both of those declarations and the underlying data, in addition to issues such as his background knowledge concerning the patent, the work that led to it, and its discussion of the prior art.  This case also presents unique circumstances that must be explored concerning how Corteva devised and obtained the asserted claims.  Specifically, it appears that it was only after Corteva became aware of a published Monsanto patent application relating to the accused products that Corteva decided to file the application that led to the patent-in-suit.  Further, in an attempt to try to cover a feature of the accused products, Corteva had to amend the patent specification itself—an unusual procedure.  Defendants are entitled to depose the named inventors about these and related issues, which do not arise in the usual case and warrant a departure from the normal seven-hour limit.  Moreover, Defendants note that as there is only one patent in this

The Honorable Gregory B. Williams
January 4, 2023
Page 3

case, with just four named inventors, there is a limited group to whom the 14-hour limit would apply. Even permitting 14-hour depositions for two of the named inventors (including the named inventor who submitted the two declarations) would be an appropriate solution given the facts of this case.

### IV.     Why the Court Should Adopt a Fact Discovery Cut-Off Date of April 19, 2024

There is no urgency supporting the accelerated schedule proposed by Corteva, which proposes that all fact discovery be completed by June 7, 2023, and a *Markman* hearing on June 28, 2023, *i.e.*, less than six months from now. D.I. 19 at 4, 24. This case has just started, and the products Corteva accuses of infringement are not yet on the market and will not be on the market until after the patent-in-suit expires. Defendants therefore submit that no acceleration is required, and the schedule should allow sufficient time for the discovery that needs to be taken in this action.

As noted above, this case will require significant fact discovery. As such, adopting Corteva's proposed schedule would be highly prejudicial to Defendants. Corteva has accused multiple products of infringement. Discovery is needed concerning the background of the patent-in-suit, both in terms of inventor knowledge and experimental data generated at Corteva before and after the original application for the patent-in-suit, as well as the prosecution and history of the applications resulting in the patent-in-suit. Fact discovery will also be needed concerning Corteva's damages allegations in light of the particular circumstances of this case.

It is Defendants' understanding that Your Honor has already scheduled trials into March 2025, with a large number of trials set in 2024. Defendants respectfully submit that there is no reason for this action to jump ahead of those other cases. Given that one of Defendants' counsel already has a trial scheduled for March 2025, along with the Passover holiday in mid-April 2025, Defendants proposed a trial date in May 2025. Corteva, by contrast, proposes that trial be held within 22 months of the filing of the complaint—a pace that would be accelerated even for an ANDA case with a 30-month stay deadline, which of course is not applicable here.

Finally, as noted in the cover letter to the proposed scheduling order, a third-party reexamination request was recently filed against the patent-in-suit, and a decision is expected to be issued by February 20, 2023. The USPTO's decision concerning that request—and how Corteva responds to any initiation of reexamination—could well impact the issues in the case. This reinforces that Corteva's suggestion that fact discovery and a Markman hearing should be completed within six months is both unrealistic and unwarranted.

Defendants respectfully request that the Court adopt their proposals.

The Honorable Gregory B. Williams
January 4, 2023
Page 4

                                                Respectfully,

                                                */s/ Derek J. Fahnestock*

                                                Derek J. Fahnestock (#4705)

DJF/rah
Enclosures
cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)