**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1046-GBW |
| | ) | |
| MONSANTO COMPANY and BAYER CROPSCIENCE LP, | ) | **REDACTED VERSION** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING *EX PARTE* REEXAMINATION**

OF COUNSEL:

Michael J. Flibbert
Pier D. DeRoo
Kassandra M. Officer
Rachael P. Dippold
Meredith H. Boerschlein
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Chad S.C. Stover (No. 4919)
BARNES & THORNBURG, LLP
222 Delaware Ave., Suite 1200
Wilmington, DE 19801-1054
302-300-3474
chad.stover@btlaw.com

*Attorneys for Plaintiff Corteva Agriscience LLC*

Dated: March 17, 2023

# TABLE OF CONTENTS


I. Introduction ... 1

II. Nature and Stage of Proceedings ... 3

III. Statement of Facts ... 4

A. Bayer's and Corteva's Obviousness-Type Double Patenting Reexaminations ... 4

B. Current Status of the '555 Patent Reexamination ... 5

IV. Summary of Argument ... 7

V. Legal Standard ... 8

VI. Argument ... 9

A. A Stay Would Not Simplify the Issues in the Case or Meaningfully Reduce the Burden of Litigating this Case ... 9

1. The Reexamination Does Not Involve All Asserted Claims and Cannot Affect Corteva's Infringement Allegations Against a Majority of the Accused Products ... 9

2. A Stay Would Not Simplify Bayer's Defenses, and Bayer's Offer to Not Relitigate One OTDP Theory Is an Empty Gesture ... 10

3. The Reexamination Is Highly Unlikely to Result in the Cancellation or Amendment of Any Claim of the '555 Patent ... 11

B. The Current Stages of the Proceedings Do Not Justify a Stay ... 13

C. Corteva Would Be Severely Prejudiced by a Stay ... 15

1. Corteva and Bayer Are Direct Competitors ... 15

2. A Stay Would Deprive Corteva of Meaningful Injunctive Relief in View of the Upcoming Expiration of the '555 Patent ... 16

3. Bayer's Cited Cases, Which Granted Stays in the Absence of Direct Competition, Are Inapposite ... 18

VII. Conclusion ... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. HTC Corp.*,
No. 17-83-GBW, 2023 WL 34553 (D. Del. Jan. 4, 2023)............................................ *passim*

*Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*,
No. 19-149-MN, D.I. 166 (D. Del. June 6, 2019)....................................................................18

*Amgen, Inc. v. Sandoz Inc.*,
No. 18-11026, 2021 WL 5366800 (D.N.J. Sept. 20, 2021).......................................................4

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020)................................11, 13, 19

*In re: Cellect, LLC*,
Appeal No. 22-1293 (Fed. Cir.)..........................................................................6, 7, 10, 13

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
No. 21-1365-GBW, 2023 WL 315615 (D. Del. Jan. 19, 2023)...............................................12

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
418 F.3d 1225 (Fed. Cir. 2005)..................................................................................................9

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010)...............................8, 15, 17, 18

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
No. 13-2012-SLR/SRF, 2015 WL 5145526 (D. Del. Sept. 1, 2015)............................9, 11, 15

*Cronos Techs., LLC v. Expedia, Inc.*,
No. 13-1538-LPS, 2016 WL 1089752 (D. Del. Mar. 21, 2016)................................11, 13, 14

*Ever Win Int'l Corp. v. Radioshack Corp.*,
902 F. Supp. 2d 503 (D. Del. 2012).....................................................................................14, 19

*Int'l Bus. Machs. Corp. v. Rakuten, Inc.*,
No. 21-461-GBW, 2022 WL 17848779 (D. Del. Dec. 22, 2022)............................................19

*In re Longi*,
759 F.2d 887 (Fed. Cir. 1985)..................................................................................................11

*Monsanto Co. v. E.I. Dupont de Nemours and Co.*,
No. 4:09-CV-00686 ERW, D.I. 1663 (E.D. Mo. Nov. 16, 2012)...........................................16

*Motorola, Inc. v. VTech Commc'ns, Inc.*,
No. 5:07CV171, D.I. 233 (E.D. Tex. Nov. 17, 2009)........................................................8, 16

*Personal Genomics Taiwan, Inc. v. Pacific Biosci. of Cal., Inc.*,
No. 19-1810-GBW-MPT, 2022 WL 4245532 (D. Del. Sept. 15, 2022) ................................19

*Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*,
No. 08-309-JJF-LPS, 2008 WL 5335400 (D. Del. Dec. 19, 2008) ..........................................9

*Round Rock Rsch. LLC v. Dole Food Co. Inc.*,
No. 11-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012).......................................12, 19

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013)..........................................18

*SoftView LLC v. Apple Inc.*,
No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012)...............................................14

*St. Clair Intell. Prop. Consultants, Inc. v. Sony Corp.*,
No. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) .......................................8, 11, 17

*TC Tech. LLC v. Sprint Corp.*,
No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021)..........................................11, 18

**Statutes**

35 U.S.C. § 101..................................................................................................................10, 11

35 U.S.C. § 102..................................................................................................................10, 11

35 U.S.C. § 103..................................................................................................................10, 11

35 U.S.C. § 112........................................................................................................................11

35 U.S.C. § 271(a) ...................................................................................................................16

35 U.S.C. § 271(e)(1)...............................................................................................................16

**Other Authorities**

M.P.E.P. § 2201 ..........................................................................................................................6

M.P.E.P. § 2274 ..........................................................................................................................4

Fed. R. Civ. P. 16 ...................................................................................................................1, 3

Fed. R. Civ. P. 26(f) ...................................................................................................................3

## I. INTRODUCTION

Bayer's motion marks its second attempt to evade Corteva's injunction demand through procedural delay alone. Earlier in this case, Bayer proposed an elongated litigation schedule with a trial date that coincided with the potential expiration of Corteva's asserted '555 patent, aiming to limit any meaningful injunctive relief. The Court rejected Bayer's position at the Rule 16 conference. Now, Bayer seeks a similar outcome by requesting a stay based on the same *ex parte* reexamination proceeding that the parties previously addressed. Bayer cannot satisfy the requirements for a stay, and its motion should be denied for at least three reasons.

First, Bayer vastly overstates the potential for simplifying the issues in this case. As Bayer acknowledges, the '555 patent reexamination fails to challenge all asserted claims in this action, leaving Corteva's infringement allegations against two of the three accused Bayer products untouched. Thus, the reexamination can have no effect on Bayer's infringement liability for a majority of the accused products. The reexamination also involves only a narrow, obviousness-type double patenting ("OTDP") challenge. Unlike prior art-based challenges, OTDP can be overcome by the filing of a terminal disclaimer with no claim amendments, and Corteva *will file* a terminal disclaimer if needed in the reexamination.[1] This unique reexamination is therefore highly unlikely to result in cancellation or amendment of any claim. The reexamination is further unlikely to meaningfully simplify Bayer's defenses. In particular, Bayer's proposed stipulation to drop one aspect of its OTDP defense (i.e., based on the '283 patent) is an empty gesture: Bayer would have no legal basis to maintain that defense if Corteva files a terminal disclaimer as Bayer demands.

[1] As discussed *infra* § III, Bayer is also facing similar OTDP challenges from the same third-party requester and has acknowledged that a case pending at the Federal Circuit may be legally dispositive against such challenges. Thus, a terminal disclaimer may not be necessary.

Second, the current stages of the litigation and reexamination do not favor a stay. The examiner has not rejected any claim of the ’555 patent and has not considered Corteva’s pre-office action patent owner statement, due May 1, 2023, or the third-party requester’s response, due July 1, 2023. In any future office action, the examiner may *confirm* the patentability of the challenged claims. Bayer itself has argued in its own similarly situated reexamination that “two district courts have held that it is inappropriate to apply obviousness-type double patenting” under the circumstances presented here, illustrating the questionable legal viability of the OTDP issue before the examiner. Ex. A at 5. In the litigation, by comparison, the Court has already set a trial date for July 22, 2024, and Corteva has expended significant resources in discovery. For example, March 17, 2023 (today) is the deadline for substantial completion of document production. D.I. 25, ¶ 4(b).

Third, Bayer fails to address the inappropriate tactical advantage it seeks and the severe prejudice to Corteva that a stay would cause. Rather than ceasing its infringing activities, Bayer appears to be pushing the accused products—HT4 (MON 94313) soybeans, HT5 soybeans, and HT4 (MON 87429) corn—towards launch and competition with Corteva’s Enlist E3® soybean and Enlist® corn products. Because Bayer lacks any safe-harbor protection, Corteva seeks an injunction to halt these infringing pre-launch commercial activities. Staying this case through the conclusion of the reexamination, however, would likely eliminate any possibility of a permanent injunction because trial would likely occur after the ’555 patent expires.

The OTDP issue in the reexamination boils down to a dispute over whether the ’555 patent should expire in May 2025 or January 2026, which does not justify halting this case and limiting Corteva’s potential injunctive relief, particularly since the reexamination cannot affect Bayer’s infringement liability for two of the three accused products and the examiner has not issued any rejection. Corteva respectfully requests that the Court deny Bayer’s motion.

## II. NATURE AND STAGE OF PROCEEDINGS

More than seven months ago, in August 2022, Corteva filed and served its Complaint alleging that Bayer infringes Corteva's '555 patent. D.I. 1, ¶¶ 38-44; D.I. 5; D.I. 5-1. Despite Bayer's representation that "[n]one of the accused products is on the market" (Br. at 2), Bayer continues to commercially develop its accused HT4 and HT5 soybean and HT4 corn products. *See* D.I 1-6; Ex. B at 34; Ex. C at 37, 43. In the context of this case, there is no safe harbor (as in pharmaceutical cases) to protect Bayer from liability for its pre-market commercial development activities.

Bayer answered the Complaint on September 30, 2022, after Corteva agreed to Bayer's requested extension. D.I. 14. Corteva timely requested a Rule 26(f) conference on October 19, 2022. But Bayer used the absence of a Rule 16 conference as an excuse to delay the Rule 26(f) conference, an early indication of Bayer's strategy to slow the progress of the case. D.I. 23-3. Bayer then delayed another five weeks until finally agreeing to hold a Rule 26(f) conference on November 29, 2022. Next, Bayer proposed delaying the Rule 16 conference based on the '555 patent reexamination. D.I. 19-1 at 1. Bayer also proposed a 33-month schedule for this litigation in an attempt to avoid Corteva's injunction demand by running out the term of the '555 patent. *See* D.I. 19 at 22-25. After reviewing the parties' scheduling order disputes, the Court ordered the parties to submit letter briefing addressing four issues. D.I. 20. As Corteva pointed out during that briefing, the '555 patent reexamination request is irrelevant to the timing of this case, including because a terminal disclaimer can be filed at any time. D.I. 23 at 3. After receiving the parties' briefing, the Court held a Rule 16 conference and rejected Bayer's proposed 33-month schedule, instead setting a five-day jury trial to begin on July 22, 2024. D.I. 25, ¶ 22.

Since the Court entered the schedule, fact discovery has progressed. The parties served initial disclosures, although Bayer's initial Paragraph 3 disclosures identified only five of the

required ten document custodians. Ex. D at 3. After Corteva pressed Bayer to address that deficiency (Ex. E at 1), Bayer gradually supplemented three times, finally identifying a tenth custodian last week. D.I. 43. Corteva has served its initial infringement contentions. D.I. 37. The parties have also served multiple sets of discovery requests and responses. D.I. 18, D.I. 26; D.I. 29; D.I. 31; D.I. 34; D.I. 38; D.I. 39; D.I. 42. Substantial discovery has therefore taken place, and the parties have just reached the substantial completion of document production deadline (March 17, 2023). D.I. 25, ¶ 4(b). Moreover, claim construction is set to begin soon, with a March 31, 2023 deadline for exchanging claim terms. D.I. 25, ¶ 8.

## III. STATEMENT OF FACTS

### A. Bayer's and Corteva's Obviousness-Type Double Patenting Reexaminations

In late 2022, third party Inari Agriculture, Inc. filed at least five requests for *ex parte* reexamination against both Bayer patents and Corteva patents, including the current reexamination against Corteva's '555 patent. *See* Reexamination Control Nos. 90/019,130; 90/019,131; 90/019,132; 90/019,138; 90/019,139. These reexaminations involve no prior art rejections. Instead, the sole proposed ground of rejection in each reexamination is OTDP, a "judicially created doctrine intended to prevent improper timewise extension of the patent right." *Amgen, Inc. v. Sandoz Inc.*, No. 18-11026, 2021 WL 5366800, at *26 (D.N.J. Sept. 20, 2021). As Corteva has consistently explained, a patent owner can overcome an OTDP challenge at any time during a reexamination by filing a terminal disclaimer and giving up any extended patent term. D.I. 23 at 3; *see* M.P.E.P. § 2274 (9th ed. 2023) ("[T]he examiner will treat all pending, rejected claims as being on appeal, and the examiner must maintain all of the rejections set forth in the Office action from which the appeal is taken, unless appellant has *overcome the rejection* (*e.g., by submitting* persuasive arguments, *an acceptable terminal disclaimer*, or evidence).") (emphasis added).

Inari's reexaminations target the patent term adjustment ("PTA") that the Patent Office awarded to Corteva and Bayer patents on the basis that Corteva and Bayer obtained related "child" patents that have no PTA, and thus expire earlier. For example, the Patent Office awarded the '555 patent 257 days of PTA, resulting in an expiration date in January 2026. In its OTDP challenge, Inari relies on Corteva's later-filed and later-issued '283 patent, which has no PTA and expires in May 2025. Inari's challenge thus boils down to a dispute over whether the '555 patent will expire in May 2025 or January 2026, as a terminal disclaimer would eliminate Corteva's 257 days of PTA and cause the '555 patent to expire when the '283 patent expires.

Like Corteva, Bayer has not filed any terminal disclaimers in its Inari-initiated reexaminations. Instead, Bayer has argued that "two district courts have held it is inappropriate to apply obviousness-type double patenting against a parent patent using a child patent," which is precisely the situation in the '555 patent reexamination. Ex. A at 5. Bayer has also argued that a Federal Circuit appellate decision "is expected to issue this year," which will provide "potentially dispositive guidance" on the OTDP issues Inari has raised. *Id.* Corteva and Bayer thus appear to be in agreement before the Patent Office in their respective reexaminations that it is premature to file any terminal disclaimer (thereby surrendering the full patent term) given the questionable legal viability of Inari's OTDP challenges.

**B. Current Status of the '555 Patent Reexamination**

On November 18, 2022, Inari filed its request for *ex parte* reexamination against claims 1-3 and 5-34 of the '555 patent. Inari did not challenge dependent claim 4, which includes a transgenic *soybean* cell. As detailed in its initial infringement contentions, Corteva has asserted this unchallenged claim 4 against two of three accused Bayer products (HT4 and HT5 soybeans). Ex. F at 1-2, claim chart at 5.

In the '555 patent reexamination, the examiner has not rejected any claim of the '555 patent. Following the order on reexamination, and before any office action issues, Corteva plans to file a patent owner statement explaining why the reexamination lacks merit. Corteva's statement is due May 1, 2023. Inari will then have two months to file its requester reply (i.e., by July 1, 2023). Only afterwards would the examiner issue an office action, which is several months away. Moreover, in any future office action that the examiner may issue, a rejection is by no means guaranteed. The examiner can either reject *or confirm* the patentability of the claims under reexamination:




Fig. 1 (annotated and excerpted from M.P.E.P. § 2201)

In addition, as Bayer has represented to the Patent Office, the Federal Circuit will soon render a decision that may be dispositive of the reexamination. Ex. A at 1, 5. The legal question of whether an earlier-filed, earlier-issued "parent" patent with PTA (e.g., the '555 patent) can be challenged for OTDP based on an earlier expiring "child" patent (e.g., the '283 patent) is currently on appeal. *Id.*; *In re: Cellect, LLC*, Appeal No. 22-1293 (Fed. Cir.). If the Federal Circuit forecloses

the type of OTDP challenge involved in the ’555 patent reexamination, then no terminal disclaimer will be necessary—Inari’s OTDP challenge will fail as a matter of law. As Bayer has represented to the Patent Office, a decision in the *Cellect* appeal is “expected to issue this year.” Ex. A at 5.

## IV. SUMMARY OF ARGUMENT

None of the factors relevant to Bayer’s motion support granting a stay pending completion of the reexamination of the ’555 patent:

**Issue Simplification**: A stay is unlikely to simplify the issues in this case. The reexamination will not address claim 4 of the ’555 patent, which covers two of the three accused products. Nor is the reexamination likely to result in cancellation or amendment of any claim since it only involves an OTDP challenge that can be overcome by filing a terminal disclaimer. Bayer’s Patent Office statistics, which concern reexaminations involving prior art-based rejections, are irrelevant to this unique reexamination. Bayer’s proposal to not litigate one OTDP defense is meaningless since Bayer could not maintain that defense if Corteva files a terminal disclaimer.

**Status of Proceedings**: The early stage of the reexamination weighs against a stay. The examiner has not rejected any claim of the ’555 patent or considered Corteva’s patent owner statement, due May 1, 2023, or the third-party requester’s response, due July 1, 2023. The examiner may confirm the patentability of the challenged claims in a future office action. Bayer itself has asserted in its own reexamination that OTDP may not apply as a matter of law under the circumstances presented here. Further, the Court has scheduled a jury trial to begin on July 22, 2024, and Corteva has already expended significant resources in discovery.

**Prejudice**: Corteva would be severely prejudiced by a stay. Unlike the parties in Bayer’s cited cases, Corteva and Bayer are direct competitors. Rather than ceasing its infringement, Bayer appears to be pushing the accused products towards launch and competition with Corteva’s Enlist E3® soybean and Enlist® corn products. Corteva seeks an injunction to halt those infringing

activities. Staying this case through completion of the reexamination would unfairly prejudice Corteva and provide Bayer an inappropriate tactical advantage by likely eliminating any possibility of a permanent injunction by requiring holding trial in 2026 after the '555 patent expires.

## V. LEGAL STANDARD

In deciding motions to stay, this Court considers three factors: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *3G Licensing, S.A. v. HTC Corp.*, No. 17-83-GBW, 2023 WL 34553, at *2 (D. Del. Jan. 4, 2023). In addition to these factors, this Court may also consider how a stay will impact the burden of litigation, e.g., whether a stay would substantially contribute to a final disposition of the case or a more efficient and less costly trial. *St. Clair Intell. Prop. Consultants, Inc. v. Sony Corp.*, No. 01-557JJF, 2003 WL 25283239, at *2 (D. Del. Jan. 30, 2003). Where the parties are direct competitors, or a stay would prejudice potential injunctive relief, stays are disfavored. *Id.*; *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *4-5 (D. Del. Dec. 13, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors."); *Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07CV171, D.I. 233, slip op. at 6 (E.D. Tex. Nov. 17, 2009) (denying stay where an "injunction remain[ed] an important remedy" and an asserted patent had only two and a half years remaining before expiration).

## VI. ARGUMENT

### A. A Stay Would Not Simplify the Issues in the Case or Meaningfully Reduce the Burden of Litigating this Case

#### 1. The Reexamination Does Not Involve All Asserted Claims and Cannot Affect Corteva's Infringement Allegations Against a Majority of the Accused Products

As Bayer concedes, the reexamination does not involve all asserted claims of the '555 patent. Br. at 4. Reexamination was not requested or ordered for claim 4, which Corteva asserts against two Bayer soybean products: HT4 and HT5 soybeans. D.I. 41-1, Ex. 1 at 7; *id.*, Ex. 2 at 1. Thus, Corteva's infringement claims against a majority (two of three) of the accused products will remain unaffected by the reexamination regardless of its outcome. *See CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1236 (Fed. Cir. 2005) ("infringement of even a single claim entitles a patentee to damages").

Because the reexamination cannot resolve significant infringement issues in this case, the issue-simplification factor disfavors a stay. In *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, for example, the Court found that a stay was "not warranted" where the IPR challenges did "not address all of the claims at issue." No. 13-2012-SLR/SRF, 2015 WL 5145526, at *2 (D. Del. Sept. 1, 2015) ("Given the fact that the IPRs will not fully resolve the dispute between these parties, I conclude that a stay will not simplify the issues in question or trial, will not reduce the burden of litigation, and will unduly prejudice the patent holder . . . ."); *Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) (denying stay where one asserted claim was "not the subject of the pending reexamination"). Moreover, this Court has denied stays even where *all asserted claims* have been challenged (unlike here). In *3G Licensing*, for example, the examiner issued a non-final office action rejecting all asserted claims. *3G Licensing*, 2023 WL 34553, at *4-5. But the Court found that a stay was

inappropriate because, among other things, significant issues would remain to be resolved, including infringement issues, if the Patent Office did not invalidate all of the asserted claims. *Id.*

Here, the simplification factor strongly weighs against a stay because the reexamination does *not* address all asserted claims, and thus significant infringement issues for at least two of the three accused Bayer products *will remain* unresolved regardless of the reexamination's outcome.

**2. A Stay Would Not Simplify Bayer's Defenses, and Bayer's Offer to Not Relitigate One OTDP Theory Is an Empty Gesture**

The reexamination is also highly unlikely to simplify Bayer's asserted defenses in this action. Bayer's main argument for simplification is that it will stipulate not to raise an OTDP defense based on the '283 patent. Br. at 9. That offer, however, is meaningless.

If the Federal Circuit in the *Cellect* appeal provides "dispositive guidance" barring Inari's OTDP challenges, as Bayer has stated to the Patent Office, Bayer would have no legal basis to pursue OTDP based on the '283 patent. On the other hand, if Corteva files a terminal disclaimer, the '555 patent and the '283 patent would expire on the same day and Bayer would then lack a necessary predicate for raising any OTDP defense based on the '283 patent (i.e., a different expiration date). Either way, Bayer's potential OTDP challenge will be foreclosed. Bayer's promise is therefore empty: stipulating to *nothing* cannot simplify this action.

Moreover, Bayer's proposed stipulation relates to only a portion of *one* potential defense.[2] In its Answer, Bayer asserted nine affirmative defenses, including a boilerplate defense that the '555 patent claims are "invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the doctrine of obviousness-type double patenting." D.I. 14, at 16-18. When a

[2] Bayer appears to have limited its proffered OTDP stipulation based on the '283 patent—Bayer has not promised to forego an OTDP challenge on any other grounds.

reexamination has a narrow scope like the ’555 reexamination here, this Court has denied stays because “significant issues will remain to be resolved, including . . . Defendants’ §§ 101 and 112 defenses and §§ 102 and 103 defenses based on prior art that will not be considered by the PTO.” *Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2016 WL 1089752, at *1 (D. Del. Mar. 21, 2016); *3G Licensing*, 2023 WL 34553, at *5 (citing *Cronos*).

The ’555 patent reexamination will thus leave untouched Bayer’s statutory invalidity defenses as well as eight other affirmative defenses. The parties and the Court also will have to expend time and resources addressing claim construction, validity, and infringement for at least claim 4 regardless of the outcome of the reexamination, because claim 4 is unchallenged. A stay in this case, therefore, would neither “substantially contribute to or result in a final disposition” nor “contribute to a more efficient and less costly trial”—indeed, the reexamination cannot resolve even a single complete defense from Bayer’s Answer. *St. Clair*, 2003 WL 25283239, at *2; *Courtesy Prods.*, 2015 WL 5145526, at *2.

### 3. The Reexamination Is Highly Unlikely to Result in the Cancellation or Amendment of Any Claim of the ’555 Patent

The patentability grounds at issue in the ’555 patent reexamination are narrow and unique. Third-party requester Inari proposed *no* prior art grounds, instead presenting only an OTDP challenge. Bayer nowhere disputes that Corteva can obviate any OTDP rejection simply by filing a terminal disclaimer with no claim amendments (or even any arguments)—and Corteva *will file* a terminal disclaimer if necessary. *In re Longi*, 759 F.2d 887, 894 (Fed. Cir. 1985) (“a terminal disclaimer . . . overcome[s] a rejection based on double patenting of the obviousness type”). This case is thus unlike all of those that Bayer cites, which involved prior art rejections not subject to terminal disclaimers. *See, e.g.*, *TC Tech. LLC v. Sprint Corp.*, No. 16-153-WCB, 2021 WL 4521045, at *1 (D. Del. Oct. 4, 2021) (reexamination based on “prior art”); *Brit. Telecomms. PLC*

*v. IAC/InterActiveCorp*, No. 18-366-WCB, 2020 WL 5517283, at *10 (D. Del. Sept. 11, 2020) (reexamination based on "multiple prior-art combinations"); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365-GBW, 2023 WL 315615, at *2 (D. Del. Jan. 19, 2023) (evaluating IPRs based on prior art); *Round Rock Rsch. LLC v. Dole Food Co. Inc.*, No. 11-1239-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012) (reexaminations based on prior art, *see* No. 11-1239-RGA, D.I. 14 at 11, 44-45, 110-11, 189-90, 242-43).

Because claim amendments are unnecessary to overcome any OTDP rejection that the examiner might issue, it is highly unlikely that Corteva will amend any claim of the '555 patent during the reexamination. Bayer's generalized Patent Office statistics regarding the prevalence of claim amendments or cancellations during typical reexaminations (involving prior art rejections) are thus inapposite—those statistics provide *no information* about narrow, unique reexaminations limited to OTDP grounds that can be overcome with a terminal disclaimer, as present here. Br. at 10-12. Moreover, this Court has recently declined to grant a stay based on such generalized statistics, noting the contrary statistic that all challenged claims are cancelled in only about 13% of reexaminations, reflecting a high likelihood of significant issues remaining in the litigation (rather than simplification). *3G Licensing*, 2023 WL 34553, at *4, *6.

Bayer contends that the reexamination may extend beyond OTDP, but that argument is entirely speculative. Br. at 10. Third party requester Inari has proposed no prior art rejections. The reexamination order also suggested no prior art rejections—it cited only Inari's request for reexamination, which solely raised an OTDP challenge. D.I. 41-1, Ex. 1 at 5. Nor has Bayer identified any prior art, much less prior art that it contends is more material than what the Patent Office considered during prosecution of the '555 patent. *See* Br. at 10 (Bayer speculating that the Patent Office could find the claims unpatentable over prior art without identifying any prior art).

Bayer's suggestion that Corteva will have to try "to save" the '555 patent in the reexamination vastly overstates the likelihood of an adverse outcome. Br. at 2, 16. If the examiner issues a rejection in the '555 patent reexamination, the availability of a terminal disclaimer means that the reexamination will likely be resolved in one of two ways: (1) if the Federal Circuit in the pending *Cellect* appeal rules dispositively against the type of OTDP challenge Inari has raised, the reexamination will be resolved against Inari as a matter of law, and no terminal disclaimer will be necessary; or (2) if the Federal Circuit affirms in *Cellect*, Corteva is prepared to file a terminal disclaimer, as it has consistently explained.[3] The reexamination thus boils down to a dispute over the '555 patent's expiration date—May 2025 versus January 2026—which does not justify staying this litigation now in 2023. Indeed, Bayer itself has represented to the Patent Office that the Federal Circuit's decision in the *Cellect* appeal "is expected to issue this year," and thus the expiration date issue can be readily resolved in parallel with the discovery process in this action. Ex. A at 5. At most, the parties' damages experts may have to address both expiration scenarios in their reports.

Bayer states that the potential for simplification of issues at trial is the "most important factor" bearing on whether the Court should grant a stay. Br. at 8, 12 (citing *Brit. Telecomms.*, 2020 WL 5517283, at *9). But for all the reasons detailed above, the '555 patent reexamination is highly *unlikely* to meaningfully simplify the issues in this action, and thus this factor weighs strongly *against* a stay.

### B. The Current Stages of the Proceedings Do Not Justify a Stay

Under the second factor, the Court has considered the stages of the litigation and the reexamination proceedings together. *Cronos*, 2016 WL 1089752, at *2. This factor weighs against a stay or is neutral.

---

[3] Corteva has consistently maintained this position (*see, e.g.*, D.I., 19-1, at 1; D.I. 23, at 3; D.I. 41-1, Ex. 4 at 1) and has not "changed course" as Bayer accuses. *E.g.*, Br. at 7, 9.

The early status of the reexamination cuts against a stay of the litigation, as "reexaminations can result in lengthy delays, which can hinder a plaintiff's ability to obtain timely resolution regarding its allegations of patent infringement." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 509-10 (D. Del. 2012) (weighing early status of reexamination against a stay). Here, the Patent Office has not yet even issued an action on the merits in the '555 patent reexamination. It will do so only after it considers Corteva's patent owner statement due May 1, 2023, and Inari's response due July 1, 2023, both still months away. Bayer's most recent cited Patent Office statistics also show that the median pendency of a reexamination is about 19 months. D.I. 41-1, Ex. 7 at 2. The prospect of a significant delay if a stay is entered disfavors a stay in this case. *Ever Win*, 902 F. Supp. 2d at 509-10; *Cronos*, 2016 WL 1089752, at *2 (finding that the plaintiff would be unduly prejudiced because "[g]iven the early stage of the reexamination, and the average length it takes to complete a reexamination (including appeals), it follows that the stay, if granted, would almost certainly last many years").

In this litigation, although fact discovery is ongoing, the parties have devoted substantial time and resources to briefing and resolving scheduling disputes relating to Bayer's dilatory tactics, setting a case schedule, preparing initial contentions, serving and responding to discovery requests, and negotiating a protective order. *See supra* § II. And at least Corteva has devoted substantial time and resources to document collection and production. *See SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (denying a stay despite the early stage of the litigation, in part, because substantial time and resources had been devoted to "scheduling and the resolution of discovery disputes"). The parties are also soon approaching claim construction, with the initial exchange of claim terms and proposed constructions set for March 31, 2023. Additionally, the Court has already scheduled a five-day jury trial to begin on

July 22, 2024, which may not be easy to reschedule if a stay is granted given the Court's busy docket. *See* D.I. 25, ¶ 22; *Cooper*, 2010 WL 5149351, at *3 (noting that scheduling trials is a challenge and "significant resources were devoted to formulating a schedule").

**C. Corteva Would Be Severely Prejudiced by a Stay**

The prejudice factor, like the issue simplification factor, strongly disfavors a stay in this case. A stay would unreasonably delay resolving this case and deprive Corteva of meaningful injunctive relief. Bayer's motion improperly seeks the tactical advantage of a delay to advance its own products toward commercial launch without risk of an injunction and to regain market share that it has recently lost to Corteva.

**1. Corteva and Bayer Are Direct Competitors**

Stays are disfavored when the parties are direct competitors, as Corteva and Bayer are here in the transgenic corn and soybean markets relevant to this litigation. *Cooper*, 2010 WL 5149351, at *4-5 ("Courts are reluctant to stay proceedings where the parties are direct competitors."); *Courtesy Prods.*, 2015 WL 5145526, at *2 (denying stay in a case "between competitors"); Ex. B at 15 (Bayer listing Corteva among its core competitors).

With respect to the accused Bayer HT4 soybean and corn products specifically at issue in this case, Bayer is planning to launch them to regain market share lost to Corteva's Enlist E3® soybeans and Enlist® corn—a clear indicator of direct competition. Bayer's February 2023 earnings call with investors, for example, noted the "continued penetration from [Corteva's] Enlist," with "Enlist gaining trait share" in advance of Bayer's "launch of HT4" products. Ex. G at 16-17. Bayer has also acknowledged "Enlist's market share gains" against Bayer's current Xtendflex® soybeans and explained that the accused HT4 soybeans are a "replacement" for Bayer's current Xtendflex® soybeans, which seed companies sell side-by-side with Corteva's Enlist E3® soybeans. Ex. K at 8; Ex. L; Ex. H at 11 (Bayer's Crop Science Division President

describing "head-to-head competition" against Corteva's Enlist and an "increase of the penetration of Enlist in the market").

Bayer's claim that it will not launch its accused soybean and corn products until after the '555 patent expires is irrelevant and unsupported by any cited evidence. Br. at 15 (no citation provided to support Bayer's bald assertion that the accused products "will not be sold until after the expiration of the '555 patent, if ever"). Further, making or using the claimed invention by Bayer in the United States without authorization constitutes direct infringement. 35 U.S.C. § 271(a). The statute provides no safe harbor, as in the pharmaceutical space, that could shield Bayer's pre-marketing activities against Corteva's infringement claims. *See* 35 U.S.C. § 271(e)(1); *Monsanto Co. v. E.I. Dupont de Nemours and Co.*, No. 4:09-CV-00686 ERW, D.I. 1663, slip op. at 1-2 (E.D. Mo. Nov. 16, 2012) (refusing to expand the safe harbor beyond the pharmaceutical context). Yet Bayer appears to be continuing, and even accelerating, its infringement. Bayer has recently filed for regulatory approval for its accused HT4 soybean product. Ex. I. And just this month, Bayer represented that its HT5 soybeans have been advanced to Phase 3 of development. Ex. B at 34.[4]

### 2. A Stay Would Deprive Corteva of Meaningful Injunctive Relief in View of the Upcoming Expiration of the '555 Patent

In addition to the direct competition between Corteva and Bayer, the upcoming expiration date of the '555 patent and prejudice to Corteva's injunction demand further weigh heavily against a stay. *Motorola*, slip op. at 6 (denying stay where an "injunction remain[ed] an important remedy" and an asserted patent had only two and a half years remaining before expiration); *St. Clair*, 2003

---

[4] Contrary to Bayer's representation during a meet and confer that HT5 soybeans are only in a "concept" stage, Bayer has publicly shown photographs of HT5 soybean field testing in Jerseyville, Illinois and advanced HT5 soybeans from Phase 2 to Phase 3 of development. Ex. J at 1; Ex. C at 37, 43; Ex. B at 34.

WL 25283239, at *2 (denying stay in view of plaintiff's injunction demand); *Cooper*, 2010 WL 5149351, at *4-5.

Corteva would be unduly prejudiced by a stay because it would likely eliminate the possibility of obtaining meaningful injunctive relief. Trial has been set for July 2024, which allows for a potential injunction period through the '555 patent's current expiration date in January 2026. Based on Bayer's cited Patent Office statistics, reexaminations typically take about 19 months to complete. D.I. 41-1, Ex. 7 at 2. Therefore, (i) staying the litigation for 19 months to allow the reexamination to finish and (ii) restarting this action afterwards on a similar schedule would *eliminate* the possibility of Corteva obtaining any injunctive relief:




This prejudice to Corteva is not "self-inflicted," as Bayer alleges. Br. at 13-14. Rather, the prejudice to Corteva would be caused by Bayer's requested stay, attempting to delay the litigation. Bayer's motion to stay is not the only delay tactic that it has used in an attempt to defeat injunctive relief through delay alone. *See supra* II. Moreover, the prejudice that would occur to Corteva's

demand for a permanent injunction is not undercut by the absence of a motion for a preliminary injunction, which is an "extraordinary" remedy available in only "limited circumstances." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, No. 19-149-MN, D.I. 166, slip op. at 7 (D. Del. June 6, 2019); *Cooper*, 2010 WL 5149351, at *4 (denying stay and explaining that the absence of a preliminary injunction motion, given the "high burden" and lack of substantial discovery, "tells one nothing about [plaintiff's] motivation to obtain injunctive relief"); *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013) (denying stay and explaining that the absence of a preliminary injunction motion did "not shed much light on the amount of prejudice the non-moving party will face").

**3. Bayer's Cited Cases, Which Granted Stays in the Absence of Direct Competition, Are Inapposite**

Bayer never addresses the prejudice that a stay would cause to Corteva's injunction demand. Instead, Bayer relies on cases involving non-practicing entities or companies that did not compete with each other in the relevant market, and thus did not present issues of prejudice to potential injunctive relief. For example, Bayer repeatedly relies on *TC Technology*, which involved "a patent assertion entity" that did "not compete with" the defendant. *TC Tech.*, 2021 WL 4521045, at *9. The Court specifically distinguished its case from the situation here, emphasizing that there was "*no prospect of injunctive relief*" due to the lack of direct competition and the already-expired asserted patent. *Id*. Here, Corteva is a direct competitor of Bayer, not a patent assertion entity; the '555 patent has not yet expired and Corteva is seeking injunctive relief; and the '555 patent claims have not been rejected in the reexamination and not all claims will be reexamined if the Examiner does issue a rejection.

Similarly, in *British Telecommunications*, there was "no evidence" that plaintiff BT competed with defendant IAC in the relevant market and only potential damages were at issue, not

injunctive relief. *Brit. Telecomms.*, 2020 WL 5517283, at *7-8 ("Because BT does not compete against the Match entities, it is likely that any remedy BT might obtain in this case would be limited to an award of damages."). Here, Corteva is seeking entry of a permanent injunction precluding further infringement by Bayer, not simply an award of damages. Staying this case until completion of the reexamination, as Bayer requests, would deprive Corteva of its ability to seek a permanent injunction, exacerbating the harm caused by Bayer's infringement.

Bayer's other cited cases are similarly inapposite. *See Round Rock Rsch.*, 2012 WL 1185022, at *1 (involving another "non-practicing entity" that did "not compete with the defendants," where discovery had not started and no trial date was set); *Personal Genomics Taiwan, Inc. v. Pacific Biosci. of Cal., Inc.*, No. 19-1810-GBW-MPT, 2022 WL 4245532, at *2 (D. Del. Sept. 15, 2022) (plaintiff could not "identify a single product that it manufactures" and only monetary damages were at issue); *Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, No. 21-461-GBW, 2022 WL 17848779, at *12 (D. Del. Dec. 22, 2022) (parties that were "not direct competitors" and the plaintiff would not suffer any loss of market share or erosion of goodwill due to a stay); *Ever Win*, 902 F. Supp. 2d at 510 (the evidence did "not indicate that the parties [were] direct competitors"). Here, in contrast, Corteva has established that the parties are direct competitors in the relevant market and that it would be severely prejudiced by a stay, which would significantly delay trial and preclude any injunctive relief in view of the upcoming expiration of the '555 patent.

## VII. CONCLUSION

Because the issue simplification and prejudice factors weigh strongly against a stay, and the stage of proceedings factor is at most neutral, Corteva respectfully requests that the Court deny Bayer's Motion to Stay (D.I. 40).

Respectfully submitted,

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
BARNES & THORNBURG, LLP
222 Delaware Ave., Suite 1200
Wilmington, DE 19801-1054
302-300-3474
chad.stover@btlaw.com

*Attorneys for Plaintiff Corteva Agriscience LLC*

OF COUNSEL:

Michael J. Flibbert
Pier D. DeRoo
Kassandra M. Officer
Rachael P. Dippold
Meredith H. Boerschlein
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Dated: March 17, 2023
**Redacted Version filed on March 24, 2023**